THE HON. JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PROASSURANCE SPECIALTY INSURANCE COMPANY dba NOETIC SPECIALTY INSURANCE,<br><br>Plaintiff,<br><br>vs.<br><br>THE LAW OFFICES OF JAMES W. TALBOT, PLLC; JAMES W. TALBOT; CORONUS XES, LTD., a Wyoming corporation; and GLOMAD SERVICES, LTD., a Wyoming corporation,<br><br>Defendants. | No. 2:21-cv-01067-JHC<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Note on Motion Calendar: 06/24/2022 |

## INTRODUCTION

This is an insurance coverage declaratory judgment action. ProAssurance Specialty Insurance Company dba Noetic Specialty Insurance ("Noetic") issued a claims-made-and-reported professional liability insurance policy to The Law Offices of James W. Talbot, PLLC and James W. Talbot (collectively, "Talbot"). The policy is generally limited to claims that are first made against the insured *and* reported to Noetic during the policy period of the policy. Talbot was countersued in June 2020 for legal malpractice, but did not report that claim to Noetic during the prior policy period in effect at that time, which ran from September 4, 2019 to September 4, 2020. Talbot first provided notice of the claim against him in June of 2021

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 1
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

during the subject policy period, after a default judgment had been entered on the Counterclaim, for more than $800,000, due to Talbot's conduct during that litigation.

There is no genuine issue of material fact that Talbot knew of the Counterclaim, that the Counterclaim was asserted during the prior 2019-2020 policy period, and that Talbot failed to report the Counterclaim until the subject 2020-2021 policy period. As a matter of law, Talbot cannot meet their threshold burden of coming within the subject policy's Insuring Agreement. In addition, Talbot cannot establish a necessary condition precedent to seeking coverage because the claim was first made against Talbot before the start of the subject policy period wherein written notice of the Counterclaim was first provided to Noetic. For these reasons, the Court should enter summary judgment declaring that Noetic has no duty to defend or indemnify Talbot regarding the underlying action and the judgment that has been entered against Talbot in that action, and dismiss the Counterclaim alleged by Defendants Coronus XES, Ltd. and Glomad Services, Ltd. (collectively, "Coronus").

## BACKGROUND

**A.   The Underlying Action, the Counterclaim for Legal Malpractice, Talbot's Answer to the Counterclaim and the Entry of Judgment Against Talbot.**

In November of 2019, Talbot commenced an action, styled *The Law Offices of James W. Talbot, PLLC and James W. Talbot vs. Laurel Aarsvold, et al.*, No. 19-2-29686-1 SEA ("The Underlying Action"), seeking unpaid legal fees from Coronus XES, Ltd. and Glomad Services, Ltd., Bright Morning Consulting, LLC and several individuals.[1] On June 2, 2020, Coronus

---

[1] Declaration of John M. Silk ("Silk Decl."), ¶2, and Exhibit 1 thereto. The originally filed Complaint in this action refers to the filing of suit by Talbot "[o]n or about September 24, 2019" with Exhibit 1 to the Complaint being an undated copy of a Complaint that Talbot had provided to Noetic. *Dkt.* 1 at 3:25-4:3. That reference requires clarification and correction. Although that Complaint is the one that Talbot provided to Noetic in June 2021, the King County Superior Court docket reflects that Talbot initially filed suit, in Case No. 18-2-23934-6, on September 25, 2018, dismissed it without prejudice on September 16, 2019, and then re-filed suit, on November 8, 2019. Noetic requests that the Court take judicial notice that the underlying lawsuit at issue herein is the one filed in November 2019. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)(Court filings from cases in other courts are a proper subject of judicial notice.); Fed. R. Evid. 201.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 2
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON  98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

responded with a Counterclaim for Legal Malpractice ("Counterclaim"). The operative allegations of the Counterclaim are as follows:

### III. COUNTERCLAIM FOR LEGAL MALPRACTICE

…

6.1    Defendant-in-Counterclaim JAMES W. TALBOT (hereinafter "TALBOT") is a resident of Seattle, King County, Washington and owns and operates defendant-in-counterclaim LAW OFFICES OF JAMES W. TALBOT, PLLC with its principal place of business in Seattle, King County, Washington.

6.2    At all times relevant to these proceedings, TALBOT was acting within the course and scope of his employment by and/or principal in the LAW OFFICES OF JAMES W. TALBOT, PLLC. LAW OFFICES OF JAMES W. TALBOT, PLLC is therefore jointly and severally liable for the negligent acts and omissions of TALBOT pursuant to *respondeat superior* and/or RCW 18.100.070.

6.3    On or about June 1, 2017, a company named Bright Morning Consulting, LLC. filed a Complaint in the King County Superior Court case no. 17-2-14094-5 SEA entitled *Bright Morning Consulting, LLC v. Daniel C. Webb and Red River Solutions, LLC* (i.e. the Underlying Matter). Defendants/Plaintiffs-in-Counterclaim CORONUS XES, LTD and GLOMAD SERVICES, LTD were not parties to the Underlying Matter at that time.

6.4    On or about August 17, 2017, Red River Solutions, one of the defendants in the Underlying Matter, filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington case no. 17-13642-TWD entitled *In re: Red River Solutions, LLC*.

6.5    On or about August 31, 2017, Defendant Daniel Webb filed a counterclaim in the Underlying Matter against plaintiff Bright Morning Consulting, LLC and a third-party complaint against its owner, Eugene Bellavance. Webb also asserted and (sic) a third-party complaint against Matthew Aarsvold, Laurel Aarsvold, Coronus XES, Ltd. and Glomad Services, Ltd. in the Underlying Matter. However, by virtue of the bankruptcy filing of Red River Solutions, LLC, Daniel Webb did not own the third party claims that he alleged against CORONUS/GLOMAD and had no standing to assert those claims against any of the third-party defendants.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 3
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

6.6     On or about November 16, 2017, TALBOT undertook the joint representation of Plaintiff Bright Morning Consulting, Eugene Bellavance, Matthew Aarsvold and Laurel Aarsvold, and CORONUS/GLOMAD in the Underlying Matter.

6.7     Upon accepting representation of CORONUS/GLOMAD, Defendant TALBOT undertook a duty of competence in favor of CORONUS/GLOMAD to meet the standard of care applicable to a reasonably prudent Washington attorney representing a client in the same or similar circumstances as CORONUS/GLOMAD. Defendant TALBOT also undertook the duties of a fiduciary in favor of CORONUS/GLOMAD upon accepting representation, including the fiduciary duty of undivided loyalty.

6.8     A conflict of interest existed from the outset of TALBOT's joint representation of multiple parties in the Underlying Matter.

6.9     On information and belief, TALBOT failed to provide the jointly represented clients, including CORONUS/GLOMAD, notice of the conflicts of interest that existed among them, advise them to seek the advice of independent counsel, and obtain the informed consent of all jointly represented clients prior to proceeding with the representation.

6.10    TALBOT's failure to obtain the informed consent to the joint representation of all parties that he jointly-represented in the Underlying Matter breached the standard of care and fiduciary duties that he owed CORONUS/GLOMAD.

6.11    The appropriate remedies for TALBOT's breach of fiduciary duties includes disgorgement of fees paid to him, and forfeiture of all fees that he claims.

6.11 (sic) TALBOT further breached the standard of care in his representation of CORONUS/GLOMAD because he did not recognize that Red River Solutions bankruptcy deprived Webb of the standing to assert those claims against CORONUS/GLOMAD.

6.12    TALBOT also breached the standard of care and his fiduciary duties in his representation of CORONUS/GLOMAD when he failed to recognize and advise his other jointly-represented clients (Bright Morning and Bellavance) that they could and should have dismissed their Complaint in the Underlying Matter upon the filing *In re: Red River Solutions, LLC.*

6.13    As a direct and proximate result of TALBOT'S failure to recognize Webb's lack of standing in the Underlying Matter and failure to recognize his conflict of

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 4
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 Second Ave., Suite 2050
Seattle, Washington 98164
Telephone: (206) 623-4100
Fax: (206) 623-9273

interest, CORONUS/GLOMAD incurred damages that include but are not limited to: (a) all fees paid TALBOT; (b) all fees claimed by TALBOT; (c) all mitigation expenses incurred by CORONUS/GLOMAD, and; such other and different damages as may be proven through discovery and/or at trial.

6.14.   On information and belief, TALBOT also breached the standard of care that he owed to CORONUS/GLOMAD when he failed to adequately research, submit evidence, and brief the issues of personal jurisdiction over CORONUS/GLOMAD in the Underlying Matter.

6.15   As a direct and proximate result of TALBOT's breach of the standard of care related to jurisdiction over CORONUS/GLOMAD, the Court in the Underlying Matter subject (sic) CORONUS/GLOMAD to the Court's jurisdiction thus incurring damages by CORONUS/GLOMAD that include (a) all fees paid TALBOT; (b) all fees claimed by TALBOT; (c) all mitigation expenses incurred by CORONUS/GLOMAD, and; such other and different damages as may be proven through discovery and/or at trial.[2]

In their Prayer for Relief, Coronus requested a judgment against Talbot for all damages incurred by them as a result of Talbot's breaches of the standard of care and/or fiduciary duty, their costs, and interest.[3]

On June 24, 2020, Talbot responded to the Counterclaim by filing a pleading entitled, "Responses to Counterclaim" in which he requested that the court deny all relief requested by the defendants, enter the relief that Talbot had requested, and award Talbot's reasonable attorneys' fees.[4]

As a result of several different motions in the Underlying Action, the trial court entered partial summary judgment against Talbot on the Counterclaim (on February 1, 2021), finding that Talbot had breached the standard of care; struck Talbot's reply to the Counterclaim and entered a default against Talbot as a sanction for violations of the court's orders (on February 12, 2021); and entered an order sanctioning Talbot in the amount of $3,762.49 (on May 6,

---

[2] Silk Decl., Ex. 2.
[3] Silk Decl., Ex. 2, at 13:13-19.
[4] Silk Decl., Ex. 3.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 5
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

2021).[5] On June 8, 2021, the court granted a motion by Coronus for a default judgment on the Counterclaim, in the principal amount of $868,003.19.[6] On June 15, 2021, Talbot filed a motion for reconsideration of the June 8, 2021 order, which, on July 15, 2021, the court denied.[7]

According to Coronus' counsel, Talbot has appealed the trial court's judgment.[8]

**B.    Talbot's Prior Professional Liability Insurance Policy with Noetic.**

When Talbot was countersued for legal malpractice and responded to the Counterclaim, both in June 2020, they carried professional liability insurance with Noetic with a policy period of September 4, 2019 (inception date) to September 4, 2020 (expiration date).[9] Talbot did not report the Counterclaim to Noetic during that prior policy period.[10]

**C.    The Issuance of the Policy.**

Noetic issued a Lawyers Professional Liability Policy, No. 20NOWA000001 ("the Policy") to the Law Offices of James W. Talbot, PLLC, with a policy period of September 4, 2020 (inception date) to September 4, 2021 (expiration date).[11]

**D.    First Notice to Noetic and Tender of the Counterclaim for Legal Malpractice.**

On June 22, 2021, Mr. Talbot first provided notice of the Counterclaim to Noetic via email and tendered the Counterclaim to Noetic for defense and indemnity.[12]

By letter dated August 10, 2021, Noetic advised Mr. Talbot that it had reviewed, investigated and considered Talbot's tender and concluded that no coverage is available for the Counterclaim under the Policy.[13] In the letter, Noetic referred to provisions in the Policy, including its Insuring Agreement, and explained the reasons for its determination:

---

[5] Silk Decl., Ex. 10.
[6] Silk Decl., Ex. 10.
[7] Silk Decl., Ex. 13.
[8] *Dkt.* 11 at 2:13-15.
[9] Declaration of Lori H. Watson ("Watson Decl."), at ¶ 2, Ex. 1.
[10] Watson Decl., at ¶ 3.
[11] Watson Decl., at ¶ 2, Ex. 2.
[12] Watson Decl., at ¶ 3, Ex. 3.
[13] Watson Decl., at ¶ 4, Ex. 4.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 6
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

The Coronus/Glomad Counterclaim for Legal Malpractice was filed on or about June 2, 2020, and the certificate of service accompanying the Coronus/Glomad Counterclaim for Legal Malpractice indicates it was served upon you the same day via the Court's ECF delivery system.  During your June 25, 2021 telephone conversation . . . , you acknowledged it was your recollection that you were served with the Coronus/Glomad Counterclaim for Legal Malpractice on or about the date stated on that document. We note that you filed a response to the Coronus/Glomad Counterclaim for Legal Malpractice on behalf of you and your Firm on June 24, 2020, which opposed the counterclaim and asserted several affirmative defenses on behalf of you and your Firm.

The Coronus/Glomad Counterclaim for Legal Malpractice is a suit served against you alleging negligent acts or negligent omissions resulting from your performance of or failure to perform professional services, and was captioned as being a "counterclaim for legal malpractice."  The Coronus/Glomad Counterclaim for Legal Malpractice asserts that the [counterclaim-plaintiffs] suffered damages which include, but are not limited to, "all mitigation expenses incurred by CORONUS/GLOMAD, and; such other in different damages as may be proven through discovery and/or at trial" in addition to seeking the return of legal fees paid to you and your Firm, and the forfeiture of all additional legal fees sought in your primary complaint. Counterclaim at ¶¶6.13, 6.15.   The Coronus/Glomad Counterclaim for Legal Malpractice sought the recovery of all stated damages against you.  Therefore, the Coronus/Glomad Counterclaim for Legal Malpractice constitutes a claim that was first made against you on or about June 2, 2020, and which you received on or before June 24, 2020, when you responded to it.

Because the Coronus/Glomad Counterclaim for Legal Malpractice was first made against you prior to the policy period of the Policy, which commenced on September 4, 2020, and was first made during the policy period of a prior policy of insurance issued to your Firm by Noetic, the requirements for coverage contained in Section I.A. of the Policy have not been satisfied.  Therefore, no coverage is available to you and your Firm for the Coronus/Glomad Counterclaim for Legal Malpractice under the Policy.  Accordingly, Noetic is not responsible for providing you and your Firm with a defense or indemnification for the Coronus/Glomad Counterclaim for Legal Malpractice, and you are responsible for continuing to arrange for the representation of yourself and your Firm for that matter, including any appeal of the Court's orders or judgment, at your own expense and as you deem appropriate.[14]

---

[14] *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 7
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

The letter also advised Mr. Talbot that earlier policies of insurance issued to his Firm by Noetic were also Claims-Made and Reported policies, had expired, and therefore did not afford any coverage for claims that were not both first made and reported during those earlier policy periods.[15]

Noetic filed this declaratory judgment action on August 10, 2021. All of the defendants have answered the Complaint, although it does not appear that Talbot have filed their Answer.

**E.      The Coronus Defendants' Counterclaim.**

In their Answer to Noetic's Complaint in this action, the Coronus Defendants have included a Counterclaim, whose operative allegations are as follows:

> 51. Plaintiffs-in-Counterclaim are judgment creditors of Defendants/Defendants-in-Cross-Claim JAMES W. TALBOT and THE LAW OFFICES OF JAMES W. TALBOT, PLLC (hereinafter, collectively "TALBOT").
>
> 52. On information and belief, Defendant-in-Counterclaim NOETIC SPECIALTY INSURANCE COMPANY ("NOETIC") issued a policy of malpractice liability insurance to Defendant/Defendant-in-Cross-Claim TALBOT, which provides or may provide insurance coverage in favor of TALBOT, including indemnification of TALBOT against all or part of the judgment entered in favor of CORONUS XES, LTD and GLOMAD SERVICES, LTD and against TALBOT in the Underlying Action.
>
> 53. Plaintiffs-in-Counterclaim and Plaintiffs-in-Cross-Claim, CORONUS XES, LTD and GLOMAD SERVICES, LTD are therefore entitled to judgment in their favor and against NOETIC for all amounts included in the judgment in the Underlying Action against TALBOT which are within coverage of the NOETIC policy of indemnification in favor of TALBOT.[16]

The Court should dismiss the Coronus Defendants' Counterclaim for the same reasons that it should grant summary judgment: Noetic has no duty to defend or indemnify Talbot regarding the Underlying Action and the judgment that has been entered against Talbot in that action.

---

[15] *Id.*
[16] Answer and Counterclaim/Cross-Claim of Coronus XES, Ltd and Glomad Services, Ltd, *Dkt*. 20, at ¶¶ 51-53.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 8
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

# AUTHORITY

## A. The Legal Standard for Summary Judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. "The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly supports its motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

There is no genuine issue of material fact, and Noetic is entitled to summary judgment affirming its determination that Talbot does not satisfy the requirements of the Policy's Insuring Agreement and that Noetic therefore has no duty to defend or indemnify Talbot in the Underlying Action, and dismissing the Coronus Counterclaim.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 9
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

B.  **The Legal Standard for Determining a Liability Insurer's Duty to Defend and to Indemnify.**

Under Washington law, the interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). Courts consider the policy "as a whole" and give it a "fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance." *X2 Biosystems, Inc. v. Fed. Ins. Co.*, 656 Fed. Appx. 864, 865 (9th Cir. 2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 110 P.3d 733, 737 (2005)). Ambiguities in insurance policies are to be interpreted in favor of the insured, but clear and unambiguous language must be given effect according to its plain meaning and may not be construed by the courts. *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 79-80, 683 P.2d 180 (1984).

Washington courts apply a two-step process to determine whether a liability policy provides coverage. First, the insured must prove that the loss falls within the policy's insuring agreement. And, if so, then the burden shifts to the insurer to prove that a policy exclusion applies. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431, 38 P.3d 322 (2002). Here, the insured cannot prove that the insuring agreement in the Policy affords coverage for the Counterclaim and judgment.

Also, Washington courts strictly construe the notice requirements of "claims made and reported" insurance policies. *Moody v. Am. Guar. & Liab. Ins. Co.*, 804 F. Supp. 1123, 1125 (W.D. Wash. 2011), citing *Safeco Title Ins. Co. v. Gannon*, 54 Wn. App 330, 338, 774 P.2d 30 (1989). As discussed below, the application of the rule of strict construction leads to the same conclusion here, that Noetic has no liability to defend or indemnify Talbot regarding the Counterclaim.

C.  **The Policy Provides No Coverage Because the Counterclaim against Talbot Was Not First Made During the Policy's Policy Period.**

The Policy provides Claims-Made and Reported coverage, which is generally limited to claims that 1) are first made against the insured *and* 2) reported to Noetic during the Policy's

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 10
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

policy period. The insuring language of the Policy is contained in Section I.A, which states in pertinent part:

### SECTION I:  INSURING AGREEMENT

**A. <u>Professional Liability "Claims" Made and Reported Insuring Clause</u>**

> The Company shall pay on behalf of the **"Insured"** all sums, in excess of the Deductible, that the **"Insured"** shall become legally obligated to pay as **"Damages"** because of a **"Claim"** resulting from an act or omission in the performance of, or failure to perform, **"Professional Services",** <u>but only if such "Claim" is: 1) first made against the **"Insured"** during the **"Policy Period"** or an Extended Reporting Period; and 2) reported in writing to the Company during the **"Policy Period"**</u> or an Extended Reporting Period.
>
> A <u>**"Claim"** first made against any **"Insured"** during a prior policy issued by the Company, but which **"Claim**" is first reported to the Company during the **"Policy Period"** or an Extended Reporting Period, is not a **"Claim":** 1) first made against the **"Insured"** during the **"Policy Period"** or an Extended Reporting Period; and 2) reported in writing to the Company during the **"Policy Period"** or an Extended Reporting Period, as required by this Insuring Agreement.</u>

[Underlined emphasis added.][17]

The Counterclaim meets several of the requirements in the Insuring Agreement. For example, it constitutes a "Claim" for "Damages" resulting from an act or omission in the performance of, or failure to perform, "Professional Services", as the Policy defines those terms.

> The Policy defines "Claim" in Section II, entitled Definitions, as follows:
> **"Claim"** means a demand for money or services made against any **"Insured"**, including service of a suit, arbitration proceedings or a motion against any **"Insured",** alleging negligent acts or negligent omissions, or alleging **"Personal Injury"**, resulting from the performance of or failure to perform **"Professional Services"** by any **"Insured."** …[18]

---

[17] Watson Decl., Ex. 2, at 10.
[18] *Id.* at 12.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 11
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

The Policy, in turn, defines **"Professional Services"** as including "Services performed by an **"Insured"** for others as an attorney, … but only while all necessary licenses are in effect…", and defines **"Damages"** as including "any compensatory monetary judgment or award, …". [19]

The Counterclaim included a "Claim" for "Damages" resulting from Talbot's alleged negligent acts or omissions performing "Professional Services" to Coronus. In the Counterclaim, Coronus requested a judgment against Talbot for all damages incurred by them as a result of Talbot's breaches of the professional standard of care and/or fiduciary duty, that occurred together with their costs, and interest.[20]

*However*, the Insuring Agreement requires that the Claim be first made during the policy period *and* be reported in writing to the Company during the policy period, which is defined as "the period from the inception date of this Policy to the earlier of the Policy expiration date as set forth in the Declarations or the cancellation of the policy."[21] Thus, one requirement for coverage contained in Section I.A of the Policy is that the claim must be first made against the Insured during the policy period of the Policy. Section I.A also states specifically that a claim that is first made against any Insured during a prior policy issued by Noetic, but which is reported to Noetic during the policy period of the subject Policy is not a claim that was both first made and reported to Noetic during the policy period of the subject Policy.

It is undisputed that the Counterclaim against Talbot was first made in June of 2020, but not reported under the policy of insurance that was in effect at that time, as the Insuring Agreement of the prior policy also required. It is further undisputed that Talbot knew of the Counterclaim by at least June 24, 2020, when he served his Response to the Counterclaim.

---

[19] *Id.* at 14, 12.
[20] Silk Decl., Ex. 2, at 13:13-19.
[21] Watson Decl., Ex. 2, at 14.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 12
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

Because the Counterclaim was first made against Talbot prior to the policy period of the Policy (which commenced on September 4, 2020), the requirements for coverage contained in Section I.A of the Policy have not been satisfied, as a matter of law. To help avoid doubt, Section I.A of the Policy specifically sets forth that a situation like the one presented here (where the Counterclaim was first made against Talbot during a prior policy issued by Noetic, but which was first reported to Noetic during the policy period of the subject Policy) is not a claim that satisfies the requirements of the Insuring Agreement of the Policy. Therefore, the Court should declare that no coverage is available to Talbot for the Counterclaim under the Policy, and Noetic is not responsible for providing Talbot with a defense or indemnification for the Counterclaim.

**D.    The Policy Does Not Provide Coverage Because Talbot Cannot Establish a Necessary Condition Precedent.**

The Policy Conditions expressly require, as a condition precedent to coverage, that the Insured provide written notice to the Company, as soon as practicable, of any Claim made against the Insured, but in any case before the expiration of the policy period. In Section VI., entitled Conditions, the Policy contains the following provisions:

> **F.    Notice of "Claims"**
>
> As a condition precedent to the right to coverage under this policy, the **"Insureds"** and the **"Named Insured"** must, as soon as practicable, give written notice to the Company of any **"Claim"** made against any **"Insured"** and must tender the **"Claim"** to the Company for defense, but in no case shall such notice and tender occur after the expiration of the **"Policy Period",** or the Extended Reporting Period, during which the **"Claim"** was first made against any **"Insured"**.
>
> In the event suit is brought against any **"Insured"**, the **"Insured"** and the **"Named Insured"** shall also immediately forward to the Company or the Company's representative, every demand, notice, summons or other process received directly by any **"Insured"** or by any **"Insured's"** representatives.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 13
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 Second Ave., Suite 2050
Seattle, Washington 98164
Telephone: (206) 623-4100
Fax: (206) 623-9273

[Underlined emphasis added.][22]

This Notice of "Claims" provision was included in the prior Noetic policy that was in effect at the time Talbot received and responded to the Counterclaim.[23] Talbot was obligated to report the Counterclaim to Noetic at the time Talbot was served with the Counterclaim and to provide written notice to the Company as soon as practicable, and at least by the end of the policy period of the policy in effect when the Counterclaim was first made. That policy period expired on September 4, 2020. Talbot did not provide written notice until June 22, 2021, which was well after the expiration of the policy period wherein the Counterclaim was first made against them. As Talbot did not provide the required written notice, within the requisite period, he cannot satisfy a condition precedent to seeking coverage under the subsequently issued Policy.

Although Noetic has been prejudiced by Talbot's failure to provide timely notice, it need not make any showing of prejudice. Under Washington law, an insurer is not required to show actual prejudice when denying coverage for lack of proper notice under a "claims made" policy. *Moody v. Am. Guar. & Liab. Ins. Co*., 804 F. Supp. 2d 1123, 1125 (W.D. Wash. 2011) citing *Safeco Title Ins. Co. v. Gannon*, 54 Wn. App 330, 338, 774 P.2d 30 (1989)(the insurer did not need to show that it had been prejudiced by the insured's failure to timely report the claim in order to obtain summary judgment).

Other decisions of the Ninth Circuit and this Court are in accord. See *Westport Ins. Corp. v. Markham Group, Inc.*, 403 F. App'x 264, 265-66 (9th Cir. 2010) (reversing district court decision finding coverage for claim reported outside a "claims made" policy's reporting period, and confirming that notice-prejudice rule does not apply to "claims made" policies under Washington law); *Manufactured Hous. Cmtys. of Wash. v. St. Paul Mercury Ins. Co.*, 660 F. Supp. 2d 1208, 1212-15 (W.D. Wash. 2009) (finding no coverage for a claim reported after

---

[22] Watson Decl., Ex. 2, at 25.
[23] Watson Decl. at ¶ 5.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 14
JMS6878.001/4181333x

WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

the policy expired and holding that the notice-prejudice rule does not apply to "claims made" policies under Washington law).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment, declaring that Noetic has no duty to defend or indemnify Talbot with respect to the Counterclaim alleged in the Underlying Action, and dismissing the Coronus Defendants' Counterclaim alleged in this action.[24]

DATED this 31st day of May, 2022.

*s/ John M. Silk*
John M. Silk, WSBA #15035
WILSON SMITH COCHRAN DICKERSON
1000 Second Ave., Suite 2050
Seattle, WA  98104
206-623-4100 T | 206-623-9273 F
silk@wscd.com
Attorneys for Plaintiff

---

[24] Noetic reserves its right to seek rescission of the Policy and any subsequent renewal thereof, based on Talbot's failure to disclose the existence of the Counterclaim when he applied for that Policy, and its right to pursue other coverage defenses. As the circumstances shown *infra* establish Noetic's entitlement to summary judgment, it is not necessary to address the rescission claim or those other coverage defenses, at this time.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 15
JMS6878.001/4181333x



WILSON SMITH COCHRAN DICKERSON
1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON  98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

# CERTIFICATE OF SERVICE

The undersigned certifies that under penalty of perjury under the laws of the State of Washington that on the below date I caused to be served the foregoing document on:

**Attorney for Defendants Glomad and Coronus**
Brian J. Waid
Waid Law Office, PLLC
5400 California Ave. SW, Suite D
Seattle, WA 98136
(  )   Via U.S. Mail
(  )   Via Facsimile
(  )   Via Hand Delivery
(X)   Via ECF:  bjwaid@waidlawoffice.com

**Attorney for Defendants Talbot**
James W. Talbot
Law Offices of James W. Talbot
500 Yale Ave N
Seattle, WA 98109-5680
(  )   Via U.S. Mail
(  )   Via Facsimile:  206-319-4521
(  )   Via Hand Delivery
(X)   Via Email:  jim@jwtalbotlaw.com

**SIGNED** this 31st day of May, 2022, at Seattle, Washington.

                                  *s/ Traci Jay*
                                  Traci Jay

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Cause No. 2:21-cv-01067-JHC) – 16
JMS6878.001/4181333x



WILSON SMITH COCHRAN DICKERSON

1000 SECOND AVE., SUITE 2050
SEATTLE, WASHINGTON  98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273